UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JONATHAN JONES,                                    CASE NO.: 1:15-cv-236

    Plaintiffs,                                       Judge Michael R. Barrett

v.

JIM NEIL, HAMILTON COUNTY
SHERIFF,

    Defendant.

## OPINION AND ORDER

This matter is before the Court on Plaintiff Jonathan Jones's ("Jones") Motion for Partial Summary Judgment on liability (Docs. 12, 13) and Defendant Jim Neil's ("the Sheriff") Cross-Motion to Dismiss/Motion for Summary Judgment (Doc. 40).  The Sheriff and Jones have filed their respective responses in opposition to one another's motions (Docs. 41, 42), and the Sheriff has filed a reply in support of his own Motion to Dismiss/Motion for Summary Judgment (Doc. 43).  This matter is ripe for review.

**I.    FACTUAL BACKGROUND**

The undisputed facts are as follows:[1]

Jones was arrested on July 8, 2013 and charged with felonious assault in violation of Ohio Revised Code § 2903.11(A)(2), a second degree felony.  (Doc. 13, PageId 98; Doc. 32-9, PageId 852, 854-56).  Jones was indicted on July 16, 2013.  (Doc. 13, PageId 98, 100-01; Doc. 32-9, PageId 852, 859).  He was unable to make bond and remained incarcerated for 560 days.  (Doc. 13, PageId 95-96, 102-04, 121).

---

[1] For convenience, the Court does not cite to all of the evidence relied upon by both parties to support the various propositions of fact, as the basic facts are not contested and are relied upon by both parties in their cross-motions. The Court therefore finds that the citation to one or a few documents containing the relevant information sufficiently supports the facts set forth above.

1

On February 3, 2015, Jones entered a guilty plea to a reduced charge. (Doc. 13, PageId 97, 108-24; Doc. 32-9, PageId 850, 935). During the hearing, the Court indicated that it would order that Jones serve a total term of incarceration in the Ohio Department of Corrections ("ODRC") of one year and six months. (Doc. 13, PageId 121). The judge also indicated that Jones may be subject to post-release control for up to three years as determined by the Adult Parole Authority. (Id., PageId 121-22; Doc. 32-9, PageId 938). The judge further calculated that Jones would receive credit for time served in the amount of 560 days. (Doc. 13, PageId 121; Doc. 32-9, PageId 937). Upon questioning from Jones's counsel, the Court indicated that he believed Jones would be released from jail either that day, February 3, 2015, or the next day, February 4, 2015, after he had been processed. (Doc. 13, PageId 123-24). When Jones was not released on February 3, 2015 or February 4, 2015, Jones's counsel contacted the Sheriff's Office. (Doc. 13, PageId 96). Jones's counsel did not present a transcript or judgment entry, or recall submitting any other documentation, to the Sheriff or his employees to substantiate his claim that Jones was to be released on February 3, 2015. (Doc. 23, PageId 255, 294-95). Jones's counsel was informed that the Sheriff had adopted a policy of sending all sentenced persons to the ODRC in order to get a number, regardless of whether the period of the sentence has expired. (Doc. 13, PageId 96; Doc. 23, PageId 292). A subsequent letter concerning this case set forth additional details as to the Sheriff's decision to transport sentenced persons to the ODRC. (Doc. 13, PageId 126-29).

The Judgment Entry sentencing Jones was filed on February 5, 2015. (Doc. 13, PageId 97, 105-06; Doc. 23, PageId 293-94; Doc. 32-9, PageId 937-38). The Sheriff's daily transport of offenders sentenced to ODRC to that agency's reception center in Orient, Ohio leaves between 6:30 a.m. and 7:00 a.m. when such transports are necessary and scheduled. (Doc. 40-1, PageId

1808). Jones was transported to ODRC by the Sheriff on February 6, 2015, the day after the Judgment Entry was filed, and was given his official "Certificate of Expiration of Sentence" from the ODRC. (Doc. 13, PageId 96, 130).

## II. LEGAL STANDARDS

The Sheriff moves for dismissal based upon Eleventh Amendment immunity, which is discussed below, as well as pursuant to Federal Rule of Civil Procedure 56.

Pursuant to Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.*

On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Once the moving party has met its burden of production, the nonmoving party must present significant probative evidence in support of his position to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III. ANALYSIS

#### A. Eleventh Amendment Immunity

The Sheriff asserts that the suit against him in his official capacity only must be dismissed because he is entitled to Eleventh Amendment immunity. Specifically, the Sheriff argues that he was following and enforcing state law with respect to his actions concerning Jones, and he had no discretion in that duty. He further contends that he did not have the ability under state law to credit jail time or to calculate jail time as to Jones.

Jones argues that the Sheriff cannot claim he was merely complying with the law. He contends that the oral sentence of the judge is controlling, and because Jones plainly had been credited with the full jail term to which he was sentenced, the Sheriff should have released him pursuant to Ohio Revised Code § 2949.12, which should be interpreted to mean that a person is not "sentenced to a term of imprisonment" when his sentence has been fully served due to the jail-time credits awarded.

The Sheriff responds that Jones has failed to set forth any authority that gave the Sheriff discretion to ignore the terms of Ohio Revised Code § 2949.12. The Sheriff contends that the plain language of Section 2949.12 mandates that a person, such as Jones, who is sentenced to a term of imprisonment be transported to the ODRC, and affords the Sheriff no unilateral discretion to release an offender who has been sentenced to legal custody, even if the sentence is less than the number of days of jail-time credit. The Sheriff further points out that Ohio Rule of Criminal Procedure 32(C) indicates that a sentence is not final until it is recorded and journalized

4

and that the journal entry controls if there is a conflict with any oral statements made by the judge.

It is well-settled that the Eleventh Amendment prohibits a citizen from bringing a suit for monetary damages in federal court against a state, state agent, or state instrumentality without the state's consent. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120-21 (1984). It also is well-settled that such sovereign immunity applies to claims under Section 1983, meaning that states and state officials sued in their official capacity are not considered "persons" under Section 1983 and therefore cannot be sued for monetary damages without the state's consent. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 71 (1989); *Moore v. City of Harriman*, 272 F.3d 769, 771 (6th Cir. 2001). Eleventh Amendment immunity also bars any pendent state-law claims brought against state officials in their official capacity. *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) (citing *Pennhurst*, 465 U.S. at 117-21).

Here, there is no dispute that Jones sues the Sheriff in only his official capacity and for only monetary damages. Nor is there any argument raised as to any waiver of the State's immunity from suit in federal court for such claims brought under Section 1983. The dispute between the parties instead centers on whether the Sheriff was acting as a state agent under the circumstances of this case. Upon review and consideration, the Court concludes that the Sheriff acted as a state agent and may invoke the State's sovereign immunity.

Under Ohio law, county sheriffs generally are treated as county policymakers. *Crabbs v. Scott*, 786 F.3d 426, 429 (6th Cir. 2015) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484-85 (1986)). A public official who is not technically a state employee may be considered a state employee entitled to Eleventh Amendment immunity if sued in his or her official capacity

for actions taken while acting as a state agent, as when the official enforces state law or policy. *See Gottfried v. Medical Planning Servs.*, 280 F.3d 684, 692 (6th Cir. 2002) (county sheriff was acting as state agent when he acted without discretion to enforce a state court issued injunction); *Pusey v. City of Youngstown*, 11 F.3d 652, 657-58 (6th Cir. 1993) (city prosecutor who prosecuted plaintiff on state criminal charges was state actor).  The essential question in the analysis is the degree of discretion possessed by the official when implementing the contested policy.  *Cady v. Arenac County*, 574 F.3d 334, 343 (6th Cir. 2009) (citing *Brotherton v. Cleveland*, 173 F.3d 552 (6th Cir. 1999)).

Ohio Revised Code § 2949.12 is the primary state statute upon which the Sheriff bases the policy of transporting convicted offenders to the assigned facility.  Section 2949.12 provides, in pertinent part:

> Unless the execution of sentence is suspended or the convicted felon has less than thirty days to serve in prison and the department of rehabilitation and correction, the county sheriff, and the court agree otherwise, a convicted felon who is sentenced to a term of imprisonment in a state correctional institution shall be conveyed, within five days after sentencing, excluding Saturdays, Sundays, and legal holidays, by the sheriff of the county in which the conviction was had to the facility that is designated by the department of rehabilitation and correction for the reception of convicted felons.  The sheriff shall deliver the convicted felon into the custody of the managing officer of the reception facility, and, at that time, unless the department and the sheriff have agreed to electronically processed prisoner commitment, shall present the managing officer with a copy of the convicted felon's sentence that clearly describes each offense for which the felon was sentenced to a correctional institution, designates each section of the Revised Code that the felon violated and that resulted in the felon's conviction and sentence to a correctional institution, designates the sentence imposed for each offense for which the felon was sentenced to a correctional institution, and, pursuant to section 2967.191 of the Revised Code, specifies the total number of days, if any, that the felon was confined for any reason prior to conviction and sentence.  The sheriff, at that time, also shall present the managing officer with a copy of the indictment.  The clerk of court of common pleas shall furnish the copies of the sentence and indictment.

6

Ohio Rev. Code § 2949.12. The Sheriff's application of his transfer policy to Jones plainly flows directly from Section 2949.12. First, there is no evidence presented that Jones's sentence was suspended or that there was any agreement between ODRC, the Sheriff, and the judge as to the release of Jones.[2] While Jones points to the language of the judge in the sentencing transcript where the judge explained how he believed the process worked for releasing Jones, the transcript does not reflect that the judge ordered the release of Jones within a proscribed timeframe or otherwise sought agreement from or entered into an agreement with the ODRC and the Sheriff for the release of Jones on February 3, 2015 or February 4, 2015. Nor do any other documents reflect such an order or agreement. In fact, the sentencing transcript and the judgment entry both reflect that the judge expected that some processing of Jones would have to occur prior to his release. (*See* Doc. 13, PageId 105-06, 122, 124).[3]

Second, in the absence of any agreement, the statute provides that the Sheriff "shall" convey a convicted felon to the designated facility. That mandatory language provides the Sheriff with no discretion to release the convicted felon based upon his own understanding and calculation of jail-time credits. Although Jones claims that the statute should not be read to apply to a convicted felon whose jail-time credits exceed his sentence, the plain language of the statute does not provide any exemption to those with such jail-time credits in excess of the

---

[2] The plain language of the statute does not mandate an agreement between the three parties in any circumstance. Even if the Sheriff had the discretion to agree to release Jones prior to the journal entry and without transportation to the ODRC, his agreement alone – without agreement of the Judge or the ODRC – would be insufficient to relieve him of his mandatory duty under the statute.

[3] The judge indicated that Jones may have to be supervised by the Adult Parole Authority, which would have to be determined <u>before</u> he left prison. (Doc. 13, PageId 105-06, 122). That is consistent with Ohio Revised Code § 2967.28(D)(1), which provides, in pertinent part: "Before the prisoner is released from imprisonment, the parole board . . . shall impose upon a prisoner . . . one or more post-release control sanctions to apply during the prisoner's period of post-release control.").

sentence.[4] Instead, the statute focuses on whether the person is a convicted felon who is sentenced to a term of imprisonment in a state correctional institution. The record evidence in this case indeed shows that Jones was convicted of a felony and sentenced to a term of imprisonment in a state correctional institution, as the judgment entry reflects that he was convicted of "felonious assault with specification #1" and that he was sentenced to "CONFINEMENT" in the "DEPARTMENT OF CORRECTIONS[.]" (Doc. 32-9, PageId 937). Nowhere does the statute address jail-time credit or give the Sheriff the ability to unilaterally take jail-time credit ordered by the judge into consideration when deciding whether to follow the statute. Consistent with that plain reading of the statute is Ohio Revised Code § 2967.191, which provides that it is the "department of rehabilitation and correction" – not the Sheriff – that "*shall reduce the stated prison term of a prisoner*" pursuant to the judge's journal entry on sentencing and confinement. *See also* Ohio Admin. Code § 5120-2-04.

Third, the statute plainly mandates by use of the term "shall" that the Sheriff present, at the time of delivery of the convicted felon to the designated facility, a copy of the sentence, which reflects the offenses for which the convicted felon was sentenced, designates the section of the Revised Code violated, and specifies the number of days of the jail-time credit calculated. All of that information is to be provided by the clerk of court of the common pleas. That portion of the statute indicates that the sheriff is unable to utilize just any documentation reflecting the sentence for the release to be processed. Ohio Administrative Code § 5120-2-04 confirms that it is the journal entry that is necessary for the ODRC to provide jail-time credit to the offender. In fact, it is the journal entry, and not the oral sentence, that is the final judgment of the court under the Ohio Rules of Criminal Procedure. Ohio Crim. R. 32(C) ("A judgment of conviction shall

---

[4] Again, there was no requirement that the ODRC, sheriff, and judge agree in such instances. The Sheriff's unilateral agreement would not have relieved him of his mandatory duty and there is no indication that a consensus agreement necessarily would have been reached in this case.

8

set forth the fact of conviction and the sentence. . . . A judgment is effective only when entered on the journal by the clerk."). Jones has presented no statute or rule that would otherwise indicate that the Sheriff has the discretion, absent any agreement, to act to release an offender prior to the receipt of the journal entry signed by the judge.

Accordingly, the Sheriff is entitled to Eleventh Amendment immunity because he acted as an arm of the state when followed and enforced the state law.

**B. <u>Section 1983 Claim</u>**

The merits of the Section 1983 claim against the Sheriff in his official capacity is one for municipal liability only. Given the above conclusion as to Eleventh Amendment immunity, it is unnecessary to consider this issue. Nonetheless, the Court will briefly address the issue here.

To sustain a Section 1983 claim against a municipality, a plaintiff must show (1) his harm was caused by a constitutional violation, and (2) the municipality itself was responsible for that violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Cash v. Hamilton County Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004). With regard to the first issue, where no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under Section 1983. *Bukowski v. City of Akron*, 326 F.3d 702, 712-13 (6th Cir. 2003). With respect to the second issue, a plaintiff must identify a policy or custom of the municipality, connect the policy or custom to the city itself, and show that the particular injury was incurred because of the execution of that policy or custom. *Doe v. Claiborne County*, 103 F.3d 495, 507-08 (6th Cir. 1996). There must be a direct causal link between the policy and the alleged constitutional violation such that the government's deliberate conduct can be deemed the "moving force" behind the violation. *Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004).

Jones contends that his over-detention is a violation of the Due Process Clause and that the Sheriff, in his official capacity, was responsible for the violation because he had a policy or practice of transporting offenders to the ODRC after sentencing even when their jail-time credit exceeded their total sentence. Jones relies upon a memorandum from the Hamilton County Prosecutor. He further argues that it is not necessary to show deliberate indifference here because it is not a case of failure to act (e.g., failure to train).

The Sheriff argues that he, in his official capacity, cannot be responsible because Jones has not established that he maintained a policy, custom, or practice of deliberate indifference to the over-detention of inmates. Instead, he argues that the record plainly shows that he was following a mandatory statutory duty to transport Jones to the physical custody of the state pursuant to the trial court's sentencing entry. He further contends that he cannot be liable because he is not the final policymaker under state law for final government policy regarding the release of a prisoner sentenced to the legal custody of the state. Finally, he argues that Jones was subject to qualified release from ODRC, as he still was subject to the physical custody of the Ohio Adult Parole Authority for a determination as to whether he would be placed on post-release control and, if so, what the terms of post-release control would be. The Sheriff claims that Jones seeks the effect of an "unconstitutional as applied" argument without having raised such an argument by couching the Sheriff's compliance with state law as a "policy."

The Court need not address whether Jones has established a constitutional violation based on any purported over-detention because the Court finds that Jones has failed to establish that the County is responsible for any such violation. As explained with respect to Eleventh Amendment immunity, the alleged policy of the Sheriff flows directly from state statutory law, not from the County. It cannot be said that the Sheriff, a county official, is a final policymaker with respect to

10

those state laws. As previously explained, the Sheriff acted in accordance with the mandates of the state statutes with respect to his actions towards Jones. As for the actions of others, such as the ODRC or the Adult Parole Authority, with respect to the release of Jones, those actions were outside the control and authority of the Sheriff. Accordingly, the County is not, and cannot be, held responsible for any purported constitutional violation.[5]

### C. State Law False Imprisonment Claim

The merits of the false imprisonment claim against the Sheriff in his official capacity concern municipal liability only. Given the above conclusion as to Eleventh Amendment immunity, it is unnecessary to consider this issue. Nonetheless, the Court will briefly address the issue here.

#### 1. Statutory Immunity

The Sheriff argues that he, in his official capacity, is immune pursuant to Ohio Revised Code § 2744.02, *et seq*. He argues that Ohio Revised Code § 2744.02(B) includes no specific exceptions for intentional torts such that political subdivisions are immune from intentional tort claims. He contends that Jones has not alleged or established that any exception to Ohio Revised Code § 2744.02(B) applies in this case to him in his official capacity.

In response, Jones cites to *Bennett v. Ohio Department of Rehabilitation and Correction*, 60 Ohio St. 3d 107 (1991), *Corder v. Ohio Department of Rehabilitation and Correction*, 94 Ohio App. 3d 315 (10th Dist. 1994), and *Whitler v. McFaul*, 123 Ohio App. 3d 199 (8th Dist. 1997). He argues that these cases demonstrate that statutory immunity under Section 2744 does not apply in a false imprisonment/over-detention case.

---

[5] It is further noted that Jones does not directly challenge Ohio Revised Code § 2949.12, or any other related state statute, as unconstitutional on its face or as applied to him.

The Sheriff replies that the cases upon which Jones relies are inapplicable here and that Jones has identified no exception to statutory immunity.  More specifically, the Sheriff contends that *Bennett* and *Corder* are inapplicable because they were brought against the State of Ohio, as the ODRC is a department of the State of Ohio, and the State of Ohio's immunity has specifically been waived in Ohio Rev. Code § 2743.01, *et seq*.  The Sheriff argues that the waiver is inapplicable to the claim against him in his official capacity as a county sheriff.  As for *Whitler*, the Sheriff contends that only the intentional tort claims against the sheriff's employees, and not those against the political subdivision, were permitted to go forward.  The Sheriff concludes that Jones has failed to identify an exception to the Section 2744 immunity afforded to him with respect to the official capacity claim.

The Political Subdivision Tort Liability Act, as codified in Ohio Revised Code Chapter 2744, requires a three-tiered analysis to determine whether immunity is applicable. *See Riffle v. Physicians & Surgeons Ambulance Serv.*, 135 Ohio St. 3d 357, 361 (2013) (citing *Colbert v. City of Cleveland*, 99 Ohio St. 3d 215, 216 (2003)).  The first tier sets out a general rule that political subdivisions are not liable for damages.  Ohio Rev. Code. § 2744.02(A)(1).  In the second tier, the Court must determine whether any of the five exceptions to the general rule of immunity is applicable.  Ohio Rev. Code § 2744.02(B).  The third tier of the analysis requires consideration of whether a defense to liability applies that restores immunity.  Ohio Rev. Code § 2744.03.

Jones has identified no exceptions to immunity that would permit the Court to consider his claim for false imprisonment against the political subdivision.  Indeed, his state law claim is one for intentional tort, which is, by the express terms of the statute, not subject to any exception to immunity.  *See Cornelison v. Colosimo*, 2010-Ohio-2527, 2010 Ohio App. LEXIS 2103 (11th Dist. June 4, 2010) (recognizing political subdivisions are immune from intentional tort claims,

12

and finding political subdivision immune from intentional tort claim for false imprisonment, among others); *Price v. Austintown Local Sch. Dist. Bd. of Educ.*, 178 Ohio App. 3d 256, 262 (7th Dist. 2008) (holding that "political subdivisions are immune from liability from intentional tort claims" and recognizing false imprisonment as an intentional tort); *Vasquez v. Vill. of Windham*, 2006-Ohio-6342, ¶29, 2006 Ohio App. LEXIS 6298, at *16 (11th Dist. Dec. 1, 2006) (recognizing false imprisonment as an intentional tort). Moreover, as explained previously, the claim that gave rise to the claim of liability was required and authorized by state statutory law. *See* Ohio Rev. Code § 2744.03(A)(2).

The three cases relied upon by Jones are distinguishable. In *Bennett*, 60 Ohio St. 3d 107, and *Corder*, 94 Ohio App. 3d 315, the Ohio Supreme Court held that false imprisonment is actionable if the ODRC intentionally confined the inmate beyond the expiration of his sentence. *Accord: Randolph v. Ohio Adult Parole Auth.*, 2004-Ohio-6580, ¶28, 2004 Ohio Misc. LEXIS 660, at *11 (Ohio Ct. Cl. Nov. 9, 2004) (citing *Bennett*, 60 Ohio St. 3d 107, at syllabus). The decision relied on a state waiver of immunity in Ohio Revised Code § 2743.02(A)(1). There is no indication here that the decision, or the waiver of immunity, applies to the county sheriff sued in his official capacity. As for *Whitler*, 123 Ohio App. 3d at 204-05, the claims against the county itself were dismissed based upon statutory immunity. The claims that the court permitted to proceed were those against the individual defendants, not the county itself. *Id.*

Accordingly, the state law claims against the political subdivision (via a suit against the Sheriff in his official capacity only) must be dismissed on the grounds of statutory immunity.

### 2. Merits

Even assuming Eleventh Amendment immunity and statutory immunity are inapplicable, the Court concludes that Jones cannot succeed on the merits of his state law claim.

13

Relying on *Bennett*, 60 Ohio St. 3d at 109, *Corder*, 94 Ohio App. 3d 315, and *Whitler v. McFaul*, 123 Ohio App. 3d 199, Jones argues that incarceration beyond the termination of one's sentence is false imprisonment under the laws of Ohio. He argues that in accordance with those cases the deprivation of liberty is evident in the record of this case.

The Sheriff contends that a false imprisonment claim is improper as a matter of law against him. He argues that false imprisonment is purely a matter between private persons for a private end, with no intention of bringing the person detained before a court or otherwise securing the administration of the law, but that the record in this case undisputedly shows that he had a mandatory duty to transport Jones to state custody such that he was securing the administration of the law. According to the Sheriff, there is no evidence that he had knowledge that the privilege initially justifying the confinement no longer existed.

Under Ohio law, false arrest and false imprisonment are essentially indistinguishable claims. *Vasquez-Palafox v. United States*, No. 3:12-cv-2380, 2013 U.S. Dist. LEXIS 51626, at *9-10 (N.D. Ohio Apr. 10, 2013); *Hamad v. Hamad*, No.12AP-617, 2013-Ohio-2212, 2013 Ohio App. LEXIS 2120 (10th App. May 30, 2013 (citing *Rogers v. Barbera*, 170 Ohio St. 241, 243 (1960)); 45 Ohio Jur. False Imprisonment and Malicious Prosecution § 8. Both require a detention, for an appreciable time, against the individual's will, and without lawful justification. *Nerswick v. CSX Transp., Inc.*, 692 F. Supp. 2d 866, 882 (S.D. Ohio 2010). There are, however, technical differences between them, and a false arrest is itself a false imprisonment. *Vasquez-Palafox*, 2013 U.S. Dist. LEXIS 51626, at *9-10; *see also* 45 Ohio Jur. False Imprisonment and Malicious Prosecution, § 8. The primary difference under Ohio law is that false arrest involves an asserted legal authority to enforce the process of law while false imprisonment concerns purely a matter between private persons for a private end. *Vasquez-Palafoz*, 2013 U.S. Dist.

14

LEXIS 51626, at *9-10; 45 Ohio Jur. False Imprisonment and Malicious Prosecution, § 8. But, in the absence of an intervening justification, a person may be found liable for the tort of false imprisonment if he or she intentionally continues to confine another despite knowledge that the privilege initially justifying that confinement no longer exists. *Bennett v. Ohio Dep't of Rehabilitation & Correction*, 60 Ohio St. 3d 107 (1991); 45 Ohio Jur. False Imprisonment and Malicious Prosecution § 8.

Here, Jones has not demonstrated that the Sheriff acted as a private person for a private end nor that he lacked, or knew that he lacked, a lawful justification for his actions. As explained previously, the uncontroverted record shows that the Sheriff was acting pursuant to the mandates of the Ohio statute in the absent of an agreement between the requisite parties and he lacked discretion to unilaterally act otherwise under the Ohio statute. He therefore was acting with a lawful justification and continued to act in accordance with the statute upon the court's filing of the journal entry.

Accordingly, the state law claims against the political subdivision (via a suit against the Sheriff in his official capacity only) also should be dismissed on the merits.

## IV. CONCLUSION

Consistent with the foregoing, Plaintiff's Motion for Partial Summary Judgment on liability (Docs. 12, 13) is **DENIED**, and Defendant's Cross-Motion to Dismiss/Motion for Summary Judgment (Doc. 40) is **GRANTED**. The claims against the Sheriff are hereby **DISMISSED** and this matter shall be **CLOSED**.

**IT IS SO ORDERED.**

s/Michael R. Barrett
JUDGE MICHAEL R. BARRETT
UNITED STATES DISTRICT COURT